# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-6091

AMANDA J. WOLFE AND PETER E. BOERSCHINGER,
INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, PETITIONERS,

v.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before GREENBERG, ALLEN, and FALVEY, *Judges.*

# O R D E R

ALLEN, *Judge*, filed the opinion of the Court. FALVEY, *Judge*, filed a concurring opinion.

Pending before us is petitioners' Motion for Appointment of a Special Master to Enforce the Court's Judgment (Motion).[1] The Secretary opposed the Motion. After careful consideration, and for the reasons we will explain below, we will grant the motion to the extent set forth in this order.

We begin by laying out certain background principles that frame our consideration of the Motion, principles that underscore the unique nature of this order. Next, we briefly describe the salient background of the proceedings in this matter. While the parties are, no doubt, intimately familiar with the course of proceedings, it is important that everyone is on the same page. We then explain why we will appoint a special master and describe the scope of the special master's responsibilities. In other words, this section of the order will describe the extent to which we grant the Motion. And, finally, we will address who we appoint as the special master as well as certain administrative details about this appointment.

## I. BACKGROUND PRINCIPLES

There are several background principles that broadly frame our resolution of the Motion. First, we recognize that, as we have said in the class action context before, we are operating in "uncharted waters."[2] As far as we are aware, this Court is the only appellate court to have class action authority. And this is the first time the Court has been confronted with a request to appoint a special master in connection with a judgment entered in a matter in which a class has been

---

[1] The Court addressed petitioners' motion to clarify the role of class counsel in a separate order. Remaining pending before us is the Secretary's motion to suspend secretarial action pursuant to our Rule of Practice and Procedure 8. We will also address that motion in separate orders.

[2] *Skaar v. Wilkie*, 32 Vet.App. 156, 200 (2019) (en banc) (quoting *Monk v. Shulkin*, No. 15-1280, 2018 U.S. App. Vet. Claims LEXIS 61 (Jan. 23, 2018) (en banc) (nonprecedential per curiam order)).

certified. Still, we are not without guideposts. After all, our colleagues on the Federal district courts have managed class actions for decades under the Federal Rules of Civil Procedure, including using special masters.[3] Nevertheless, because the terrain over which we travel is unexplored, we tread with some caution.

Second, we know that the Federal Circuit has been clear that this Court has the authority to adjudicate claims as class actions.[4] Thereafter, this Court has recognized that we will entertain class actions in appropriate situations in the context of both petitions filed under the All Writs Act as well as in direct appeals of Board of Veterans' Appeals decisions.[5] We recently adopted rules of procedure for that purpose.[6] And, of course, we certified a class in this matter.[7] The point here is that we have crossed the Rubicon in terms of whether there will be class actions at our Court. There are and will be.

Third, though the Federal Circuit made clear that we have the authority to certify classes, it did not – nor could it – transform the Court from an appellate tribunal into a district court. As a practical matter this means the Court is confronted with the question of how we, as an appellate court, can effectively manage a class action without the flexibility a district court enjoys. Here, the issue is how the Court can ensure that a class action judgment is being implemented when there are disputes about that issue. Assessing compliance disputes through a three-judge panel following standard appellate procedures is, to put it mildly, a cumbersome process. So, we will need to be creative in how we effectuate the authority the Federal Circuit held we have and that we have adopted.

Fourth, we are confident that we have the authority to appoint a special master to assist us in managing class actions in appropriate situations. To begin with, our Rule of Practice and Procedure 23(d)(1) provides that "[i]n managing the litigation of a class action proceeding under this Rule, the Court may issue all orders that it deems necessary and proper."[8] So, we have built into our Rule 23 tools to address the difficulties we may face as an appellant body conducting class action proceedings. Moreover, our decision concerning the power to appoint special masters is consistent with the Federal district court practice, well settled even before the adoption of the current version of Federal Rule of Civil Procedure 53, that explicitly provides for the appointment of special masters.[9] We caution that recognizing that we have the power to appoint a special master

---

[3] *See generally* FED. R. CIV. P. 53 (providing for appointments of special masters); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH ED., § 21.661, at 332 (noting use of special masters in class actions to, among other things, "oversee[] implementation of an injunction").

[4] *Monk v. Shulkin*, 855 F.3d 1312, 1321-22 (Fed. Cir. 2017).

[5] *See Skaar*, 32 Vet.App. at 177-78 (appeal context); *Monk v. Wilkie*, 30 Vet.App. 167, 170-71 (2018) (en banc) (petition context).

[6] *See* U.S. VET. APP. MISC. ORD. 12-20 (Nov. 10, 2020).

[7] *Wolfe v. Wilkie*, 32 Vet.App. 1, 41 (2019).

[8] U.S. VET. APP. R. 23(d)(1).

[9] *See, e.g.*, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 72 F.3d 857, 864 (Fed. Cir. 1995) ("The federal courts have certain inherent powers to appoint persons unconnected with the court to aid judges in the performance of certain duties."), *vacated on other grounds*, 117 F.3d 1385 (Fed. Cir. 1997); *United States v. Yonkers Bd. of Educ.*, 29 F.3d 40, 44 (2d Cir. 1994) ("The power of the federal courts to appoint special masters to monitor

does not mean that special masters will, or should, be appointed in all cases. There should be a reason specific to a given proceeding that justifies any such appointment.[10]

And, finally, we are fully aware that the Secretary has appealed our decision in this matter to the Federal Circuit. That appeal has important implications for any action that we take because filing an appeal is "an event of jurisdictional significance."[11] Once an appeal has been taken, we are without authority to change the rights and obligations of the parties under the order before a higher court.[12] So, we will take care to ensure that in this matter we do no more than ensure compliance with our orders and that we do not alter those orders. The fact is, this balancing act merely serves as another example of how our newly minted class action authority poses difficult issues about many matters, including those related to jurisdiction.[13]

## II. COURSE OF PROCEEDINGS

This action has a long history, beginning on October 30, 2018, when the petitioners filed their original request for the issuance of a writ of mandamus and certification of a class action. We will not recount every twist and turn of the proceedings. Instead, to set the stage for explaining the appointment of a special master, we focus on the principal events and decisions.

After extensive pre-argument briefing, oral argument, and supplemental postargument briefing, on September 9, 2019, the Court issued a precedential order concerning the petition. As germane to the Motion before us, the Court's order provided as follows:[14]

- We certified the following class for purposes of the order: "All claimants whose claims for reimbursement of emergency medical expenses incurred at non-VA facilities VA has already denied or will deny, in whole or in part, on the ground that the expenses are part of the deductible or coinsurance payments for which the veteran was responsible."

- We appointed Mark B. Blocker, Esq., of Sidley Austin LLP, and Barton F. Stichman, Esq., of the National Veterans Legal Services Program, as class counsel.

- We invalidated 38 C.F.R. § 17.1005(a)(5) because we determined that it was contrary to 38 U.S.C. § 1725.

- We determined that the Secretary's decisions made under § 17.1005(a)(5), to the extent they denied reimbursement to class members for medical expenses deemed

---

compliance with their remedial orders is well established.").

[10] *Accord* FED. R. CIV. P. 53(a).

[11] *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).

[12] *See Am. Trucking Ass'ns Inc. v. Frisco*, 358 U.S. 133, 145-46 (1958).

[13] *See, e.g.*, *Monk v. Wilkie*, 32 Vet.App. 87, 93-97 (2019) (en banc) (discussing this Court's jurisdiction to address the merits of a dispute while an appeal concerning our decision to certify a class is pending at the Federal Circuit).

[14] All the cited provisions of our September 2019 order appear at *Wolfe*, 32 Vet.App. at 41.

3

deductibles or coinsurance, in whole or in part, were invalid. Accordingly, we ordered the Secretary to readjudicate those reimbursement claims under section 1725's proper interpretation.

- And we directed the Secretary to cease sending letters to claimants containing incorrect information about reimbursement claims and provided that within 45 days of the date of the order "the Secretary prepare and submit to the Court for approval a plan for providing notice to veterans affected by the provision of notice that contained an incorrect statement of the law concerning reimbursement of costs for non-VA emergency care."

A flurry of activity followed our September 2019 order. In October 2019 the Secretary filed an opposed motion for entry of judgment or, in the alternative, certification for interlocutory review.[15] We heard oral argument on that motion (among other matters) in January 2020. To narrow the issues between the parties we directed the parties to meet and confer, and we deferred decision on the Secretary's motion in the interim. The parties were able to resolve several issues, but disputes between them remained. In particular, a dispute arose concerning the Secretary's compliance with the September 2019 order. In this regard, in March 2020, petitioners filed an opposed motion to enforce the September 2019 order.

In an April 2020 order, we resolved both the Secretary's motion concerning entry of judgment as well as petitioners' motion to enforce the September 2019 order.[16] With respect to the Secretary's motion concerning entry of judgment, we directed that he take certain actions to begin notifying class members of readjudication, and we provided that we would enter judgment promptly after class members had been notified.[17] Accordingly, we prospectively denied the motion as moot.[18]

We granted in part petitioners' motion concerning enforcement of the September 2019 order. In that regard, we made the following two orders:

- We directed that within 45 days of the date on which the Secretary informed the Court that he began his notice obligations, the Secretary begin the readjudications required under the terms of the September 9, 2019, order;[19] and

- We ordered that every 45 days after the Secretary began readjudications, he serve a status report on class counsel providing an update on the readjudication of class

---

[15] At the same time, the Secretary also filed a motion to stay the precedential effect of our September 2019 order. Following additional oral argument, we denied that motion. *See* Order, *Wolfe v. Wilkie*, U.S Vet. App. No. 18-6091 (Jan. 24, 2020).

[16] *See* Order, *Wolfe v. Wilkie*, U.S. Vet. App. No. 18-6091 (Apr. 6, 2020).

[17] *Id*. at 4.

[18] *Id*.

[19] *Id*.

members' claims using certain of the categories of claimants the parties had identified in a joint submission to the Court filed on March 9, 2020.[20]

The Secretary complied with the notice requirements of our April 2020 order, and the Court entered judgment on April 15, 2020. On June 11, 2020, the Secretary filed his appeal to the Federal Circuit. That appeal remains pending.

While at the time the Court was not aware of the activities taking place in the wake of our entry of judgment, the Secretary proceeded with readjudications and provided class counsel with the status reports we had directed. But the process was not a smooth one, or at least not one in which the parties could agree that matters were proceeding appropriately or well. We learned of that reality with the filing of the October 2020 Motion before us today, the Motion concerning the appointment of a special master. It suffices to say that class counsel believe that the Secretary is acting too slowly in terms of readjudications and has provided confusing and inaccurate status reports, hampering counsels' ability to ensure that VA is complying with the terms of the September 2019 order. On the other hand, the Secretary contends that he is working diligently to comply with the Court's orders and has provided sufficient information in the status updates (including correcting errors identified in those reports) to allow class counsel to monitor compliance with the September 2019 order.

### III. APPOINTMENT OF A SPECIAL MASTER IS WARRANTED, AT LEAST TO A LIMITED DEGREE.

We conclude that appointment of a special master is warranted and will, therefore, grant petitioners' Motion to the extent set out below. As we will explain, and cognizant of the novelty of the situation we face, the appointment is one with limited responsibilities, at least at this point. We have two principal reasons for concluding that appointment of a special master is appropriate here.

First, we are in a difficult position in terms of assessing the parties' competing narratives concerning VA's compliance with our orders. The briefs present different, often starkly different, takes on the pace of readjudications as well as on the accuracy and utility of the Secretary's status reports. We attempted to address these issues by designating a member of the panel to hold a status conference with counsel and, after that, we directed the parties to work to narrow their dispute. Through no fault of any party, that process did not succeed either in result or in clarifying the state of affairs. We conclude that an independent assessment of the factual underpinnings of the parties' dispute would assist the Court greatly.

Second, and somewhat relatedly, we believe it is possible that at least a portion of the difficulties between the parties flows from ineffective communication. We ascribe no ill will to counsel for the class or to the Secretary. But our review of the various documents submitted in regard to the motion often shows a disconnect concerning matters ranging from terminology to the reason for various requests or responses. Take the 45-day reports for example. The back-and-forth concerning the reports is extensive. Indeed, at times it appears as if the reports – which are merely tools to allow class counsel to assess VA's compliance with the Court's order – have taken on a

---

[20] *Id.*

central role in the parties' disputes, as if they were ends instead of means. It may be that the state of affairs between the parties can't be helped. Yet it seems equally possible that these disputes reflect, at least in part, a failure of *effective* communication.

In sum, we have concluded that a special master would assist in two principal areas. First, a special master would assist in providing the Court with information – that is, the special master would provide an independent assessment of matters related to compliance with the Court's order. Second, a special master would serve as a facilitator of sorts. It may be that counsel simply can't work together more effectively than they have. Sometimes that happens, even when everyone acts in good faith. But it may be that communication can be improved through the presence of an independent third party. And if that is the case, it also may be that some of the issues between the parties can be resolved without formal judicial intervention.

Our assessment that a special master would serve both information-gathering and facilitation roles informs our description of the special master's duties. In performing his duties in this matter, the special master should be guided by these principles and procedural guidelines:

- The special master is *not* empowered to alter (by expanding, contracting, or changing in any way) the terms of our orders. His duties are to provide the Court with information and to assist the parties in effectively communicating about VA's compliance with those orders so that class counsel can perform their responsibilities of monitoring compliance without inappropriately treading on how VA manages its operations.

- The special master is empowered to communicate (in writing, in person, or virtually as the special master determines) with the parties jointly as well as with either party individually as the special master deems appropriate. If the special master intends to or does communicate with either party on an ex parte basis, the special master shall provide notice of such communication to the other party either before the communication or promptly afterward.

- No later than 120 days after the appointment of the special master is effective under the terms of this order, the special master shall file a report and recommendation with the Court concerning his activities. We leave the form of the report and recommendation largely to the discretion of the special master. However, the report and recommendation should include (1) a summary of the special master's actions during the 120-day period; (2) his assessment of whether noncompliance (or undercompliance or delayed compliance) with our orders is at issue, specifying the nature of any issue he has identified; (3) whether he concludes that VA is providing sufficient information to class counsel to allow them to effectively monitor VA's compliance with our orders; and (4) whether he recommends that the Court take any further action, including reappointment of the special master, specifying the nature of such recommended action.[21]

---

[21] We again note that any action we might take is potentially constrained by the pendency of the appeal at the Federal Circuit. While the special master may take this fact into account in making recommendations, we will ultimately assess whether we can take any given action. We recognize this point may be obvious, but we make it nonetheless to

6

- The special master may, but is not required to, file interim reports to the Court during the 120-day period if he deems it useful to do so.

- Before submitting to the Court the final report and recommendation, or any interim reports, the special master shall allow the parties a reasonable time to review such submissions and provide comments to the special master. The parties' comments on these submissions need not be filed on the docket in this matter, but the special master shall retain a record of such comments.

We stress that we are not appointing the special master as some sort of roving commissioner of justice. Doing so would be inappropriate for many reasons, ranging from the constitutional separation of powers to our limited ability to act while this matter is on appeal at the Federal Circuit. So, no one should read this order to do so. The special master's responsibilities set out above are designed to provide the Court with information and to assist the parties in communication.

## IV. APPOINTMENT OF THE SPECIAL MASTER

We will appoint the Honorable Thomas B. Griffith as the special master in this matter. Judge Griffith served as a judge on the United States Court of Appeals for the District of Columbia Circuit from 2005 to 2020. He joined the firm of Hunton Andrews Kurth LLP as a special counsel in February 2021, focusing his practice on Federal appellate, administrative, and investigative practices. Judge Griffith's biography and conflicts disclosure are attached to this order.

As a general matter, the parties should be provided notice of a court's intention to appoint a special master.[22] Here, the general issue of the appointment of a special master was joined because petitioners filed their Motion requesting that the Court appoint a special master and the Secretary had the opportunity to and did object. However, we believe the parties should also have the opportunity to object to the specific person we appoint. Therefore, we will allow a party to file an objection to the appointment of Thomas B. Griffith as special master.

Additionally, we note that the Federal Rules of Civil Procedure provide that the standards for judicial disqualification under 28 U.S.C. § 455 should generally apply to special masters district courts appoint.[23] Though we are not bound by the Rules of Civil Procedure,[24] we conclude that applying the judicial disqualification provisions under section 455 to special masters is appropriate as a means to ensure the actual and perceived fairness in this process. So, we will follow Rule 53 of the Federal Rules of Civil Procedure and apply the disqualification standards under section 455

---

underscore that we are fully aware of the potential jurisdictional complications in this matter and our need to attend to the limits of our jurisdiction given the procedural context in which we operate.

[22] *See* FED. R. CIV. P. 53(b)(1).

[23] *See* FED. R. CIV. P. 53(a)(2), (b)(3)(A).

[24] *See* FED. R. CIV. P. 1 (specifying that the Rules apply to proceedings before district courts).

to the special master we will appoint. And we will also follow Rule 53's requirement that the special master file an affidavit attesting that recusal under section 455 is not warranted.[25]

Finally, we make clear that neither party will bear the costs associated with the special master's appointment.[26] The Court has budgeted funds for the appointment of special masters. Accordingly, the Court will make the appropriate financial arrangements directly with the special master.

Upon consideration of the foregoing, it is

ORDERED that petitioners' Motion for Appointment of a Special Master to Enforce the Court's Judgment is granted to the extent set forth in this order. It is further

ORDERED that within 5 days of the date of this order the special master file with the Court an affidavit stating that he is not aware of any reason that would require recusal under 28 U.S.C. § 455 if the special master were a judicial officer. It is further

ORDERED that any objection to the identity of the special master must be filed with the Court no later than 10 days after the date of this order. Any such objection shall set forth the grounds for the objection with any supporting authority or evidence and shall not exceed 10 pages. It is further

ORDERED that the Honorable Thomas B. Griffith is appointed as a special master to carry out the duties set forth in this order. This appointment shall be effective on the later of the date (1) when the time for the parties to object to the appointment has expired if no objection is filed or (2) when the Court rules on any objection, assuming the objection is overruled. And it is further

ORDERED that the special master file the report and recommendation described above within 120 days of the date on which the appointment becomes effective under the terms of this order. The special master may also file interim reports within this period to the extent deemed necessary.

DATED: March 24, 2021

FALVEY, *Judge*, concurring: I join the panel's well-crafted order in all aspects and write separately only to further emphasize its limited nature.

First, because judgment has entered and an appeal has been filed, the Court lacks jurisdiction to revise the parties' obligations. By this order, we do not seek to actively manage this class action or alter the parties' rights and obligations. As we have said, we "likely lack jurisdiction to actively manage this class action" once we enter judgment and the Secretary appeals.[27] Thus,

---

[25] *See* FED. R. CIV. P. 53(b)(3)(A).

[26] *See* FED. R. CIV. P. 53(a)(3) (noting that district courts should consider the costs imposed on parties as a result of appointing a special master).

[27] *Wolfe v. Wilkie*, U.S. Vet. App. No. 18-6091, unpublished order at 3 (Apr. 6, 2020).

we properly "take care to ensure that we do no more than ensure compliance with our orders in this matter and not alter those orders."[28]

Second, our jurisdictional limitations necessarily narrow the scope of the special master's authority. Petitioners request appointment of a special master not just to report to the Court but also to evaluate VA's readjudication procedures.[29] They argue that "[m]onitoring of this kind is especially appropriate in cases like this, where the Petitioners are requesting (and the Court has ordered) systemic reform of agency practices and where there are repeated and prolonged failures to comply with Court [o]rders."[30] But we ordered no "systemic reform of agency practices," nor have we found "repeated and prolonged failures to comply with Court [o]rders." The petition challenged the validity of 38 C.F.R. § 17.1005(a)(5) and, having found the regulation invalid, our orders required VA to readjudicate class members' claims and reimburse veterans for coinsurance and deductibles,[31] and provide class counsel with periodic status reports.[32] Thus, we do not authorize a special master with the broad authority sought by petitioners. Instead, we authorize one with limited responsibilities tailored to enforcement of our orders.

Finally, although our appointment of a special master here is driven by the parties' "competing narratives concerning VA's compliance with the terms of our order" and perhaps the parties' "ineffective communications,"[33] the parties' good faith inability to work through their dispute seems to also reflect a fundamental disagreement over what the Court ordered.

Having invalidated § 17.1005(a)(5) and any decisions made under it denying reimbursement to class members for deductibles and coinsurance, we ordered the Secretary to readjudicate those reimbursement claims under our interpretation of 38 U.S.C. § 1725.[34] We also ordered the Secretary to cease sending letters to claimants containing incorrect information about reimbursement claims.[35] We later ordered the Secretary to begin the readjudications and to submit periodic status reports to the class counsel.[36]

Subsequently, VA revised its adjudication process and began implementing the Court's order for VA to reimburse veterans for coinsurance and deductibles, and VA began actively readjudicating class members' claims.[37] VA has also submitted the required status reports to class counsel despite the challenges involved.[38] As the Secretary points out, "[p]etitioners do not assert

---

[28] *Id*.

[29] *Wolfe*, U.S. Vet. App. No. 18-6091, Pet., Motion at 9-10 (Oct. 27, 2020).

[30] *Id*. at 8.

[31] *Wolfe v. Wilkie*, 32 Vet.App. 1, 40-41 (2019).

[32] *Wolfe*, U.S. Vet. App. No. 18-6091, Order at 4 (Apr. 6, 2020).

[33] *Ante* at 5.

[34] *Wolfe,* 32 Vet.App. at 41.

[35] *Id*.

[36] *Wolfe*, U.S. Vet. App. No. 18-6091, Order at 4 (Apr. 6, 2020).

[37] Sec'y Brief in Opposition to this Motion at 2-3, 4, 14.

[38] *Id*. at 6.

that VA is either refusing to comply with the Court's order or refusing to readjudicate claims. Rather, [p]etitioners' complaints pertain to the accuracy of status reports that the Court ordered the Secretary to provide to class counsel every 45 days after beginning readjudications."[39] Although VA acknowledges some errors in these reports, VA has corrected those errors when identified, sought to improve upon the report with each iteration, and pledged to continue to do so with or without the appointment of a special master.[40] Thus, there seems to be little here to justify appointing a special master to enforce our judgment.

To the extent, however, that a special master with limited responsibilities can facilitate resolution of this matter, I concur.

---

[39] *Id*. at 4-5.

[40] *Id*. at 11.



# Thomas B. Griffith

**Special Counsel**

tgriffith@HuntonAK.com

Washington, DC
+1 202 955 1500

## SERVICES

**Practices**

Litigation

Issues and Appeals

White Collar Defense and Internal Investigations

Congressional Investigations

## EDUCATION

JD, University of Virginia School of Law, 1985

BA, Brigham Young University, summa cum laude, 1978

## BAR ADMISSIONS

District of Columbia

Judge Thomas B. Griffith, special counsel to the firm, recently served as a federal judge on the United States Court of Appeals for the District of Columbia Circuit.

Judge Griffith served on the DC Circuit from 2005–2020. *The Washington Post* has described him as "widely respected by people in both parties" and a "sober lawyer with an open mind." Judge Griffith joined the firm in 2021, focusing his practice on appellate litigation, congressional and internal investigations, and strategic counseling.

Judge Griffith began his legal career in private practice before serving for four years as Senate Legal Counsel, the nonpartisan chief legal officer of the United States Senate (1995–1999). In this capacity, he represented the interests of the Senate in litigation as well as advising Senate leadership and committees on investigations. After a brief return to private practice, Judge Griffith served for five years as General Counsel of Brigham Young University, the largest religious university in the country.

As a member of the DC Circuit, Judge Griffith was the author of approximately 200 opinions on a range of matters including administrative, environmental and energy law, and congressional investigations. He was appointed by the Chief Justice of the United States to serve on the Judicial Conference's Committee on the Judicial Branch, which involves the judiciary's relationship to the Executive Branch and Congress, and the Code of Conduct Committee, which sets the ethical standards that govern the federal judiciary. Judge Griffith is a Lecturer on Law at Harvard Law School, and has held the same faculty position at the law schools at Stanford and Brigham Young Universities. He has long been active in rule of law projects in Eastern Europe, Eurasia, Asia and domestically.

### Memberships

- Member, International Advisory Board of the CEELI Institute in Prague
- Member, Advisory Board of the Neal A. Maxwell Institute for Religious Scholarship at Brigham Young University
- Senior Advisor, National Institute for Civil Discourse
- Member, Advisory Board of the Center for Constitutional Studies at Utah Valley



University

- Member, the Secretary of Education's Commission on Opportunity in Athletics (the Title IX Commission) (2002–2003)
- General Counsel, Congressional Advisory Commission on Electronic Commerce (1999–2000)

## Awards & Recognition

- Distinguished Service Award, Brigham Young University (2018)
- Recipient of the David W. Peck Sr. Medal for Eminence in the Law from Wabash College (2014)

## Events

- Judge, Virtual Mock Trial, Shakespeare Theatre Company, March 11, 2021
- Speaker, Retired D.C. Circuit Judge Thomas B. Griffith Presents Civic Charity: A Key to Legal Professionalism, February 25, 2021

## Publications

- Author, How judicial activism on the right and left is threatening the Constitution, *Deseret Magazine*, February 1, 2021
- Author, The Degradation of Civic Charity, 134 *Harv. L. Rev*. F. 119, 2020
- Author, Civic Charity and the Constitution, 43 *Harv. J.L. & Pub. Pol'y* 633, 2020
- Author, Amy Coney Barrett's Religion Won't Dictate Her Rulings, *Bloomberg Opinion*, October 12, 2020
- Author, Was Bork Right About Judges?, 34 *Harv. J.L. & Pub. Pol'y* 157, 159–62, 2011





HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, D.C. 20037-1701


TEL   202 • 955 • 1500
FAX   202 • 778 • 2201


THOMAS B. GRIFFITH
DIRECT DIAL: 202 • 419 • 2064
EMAIL: tgriffith@HuntonAK.com

FILE NO: TBD

March 15, 2021

**Confidential**

**Via E-Mail**

The Honorable Joseph L. Falvey, Judge
United States Court of Appeals for Veterans Claims
625 Indiana Avenue, NW
Suite 900
Washington, D.C. 20004-2950
JFalvey@uscourts.cavc.gov

Re:     Disclosures In Connection with Special Master Appointment

Dear Judge Falvey:


At your request, please find below my disclosures related to client representations that Hunton Andrews Kurth LLP ("Hunton Andrews Kurth" or the "firm") has identified in connection with my potential appointment as a Special Master in the case styled *Amanda J. Wolfe and Peter Boerschinger, Individually and on Behalf of Others Similarly Situated, Petitioners, v. Denis McDonough, Secretary of Veterans Affairs, Respondent,* in the United States Court of Appeals for Veterans Claims, Case No. 18-6091( the "*Wolfe* litigation").

•       Neither Judge Griffith individually nor the firm has a client relationship nor any work adverse to the named plaintiffs, Amanda Wolfe and Peter Boerschinger.  If Judge Griffith is appointed as special master, the firm will decline any representations of the named plaintiffs for as long as Judge Griffith serves as special master.

•       Neither Judge Griffith individually nor the firm has undertaken any work that is related to the *Wolfe* litigation (that is, "claims for reimbursement of emergency medical expenses incurred at non-VA facilities" that the "VA has already denied or will deny, in whole or in part, on the ground that the expenses are part of the deductible or coinsurance payments for which the veteran was responsible.").  If Judge Griffith is appointed as special master, the firm will decline any representations related to the *Wolfe* litigation for as long as Judge Griffith serves as special master.



• The firm is not aware of any client relationships with any members of the plaintiff class in the *Wolfe* litigation. However, absent a specific list of names of all those in the plaintiff class, the firm cannot rule out the possibility of a client relationship with a member of the plaintiff class. As stated above, if there is such a relationship, the relationship does not involve work related to the *Wolfe* litigation.

• Neither Judge Griffith individually nor the firm has a client relationship with the U.S. Department of Veterans Affairs (VA) or with Denis McDonough, Secretary of the VA. If Judge Griffith is appointed as special master, the firm will decline any representations of the VA for as long as Judge Griffith serves as special master.

• The firm has numerous cases in which it is representing veterans adverse to the VA unrelated to the *Wolfe* litigation. Judge Griffith has not participated and is not participating in any of those representations. If Judge Griffith is appointed as special master, the firm will screen Judge Griffith and anyone assigned to work with him as special master from such representations.

• The firm represents plaintiff class counsel National Veterans Legal Services Program (NVLSP) in *National Veterans Legal Services Program v. United States Department of Defense, et al.*, in the United States Court of Appeals (4th Cir.), Case No. 20-1425, which is unrelated to the *Wolfe* litigation. The firm has taken no role for the NVLSP relative to the *Wolfe* litigation. The firm has represented NVLSP in the past on matters unrelated to the *Wolfe* litigation. If Judge Griffith is appointed as special master and for so long as he holds that appointment, the firm will decline any future representation of the NVLSP in any matter related to the *Wolfe* litigation and screen Judge Griffith and anyone assigned to work with him as special master from any representation of the NVLSP.

• In addition to the client relationship with NVLSP, the firm has a long history of handling cases for veterans because of referrals from the NVLSP. As a result of those referrals, the firm has handled over 200 cases for veterans involving claims such as:

- Medical benefits denials

- Combat-related Special Compensation (CRSC)

- Disability designations

- Service oriented disability benefits



- Medical discharge designations

- Medical retirement benefits

- Education benefits

- Correction of military records

- Discharge upgrades

As noted above, none of these has involved claims related to non-VA medical treatment at issue in the *Wolfe* litigation. If Judge Griffith is appointed as special master and for so long as he holds that appointment, the firm will screen him and anyone assigned to work with him as special master from the cases it undertakes as a result of a referral from the NVLSP.

• The firm has in the past had lawyers who have served as members of the NVLSP Advisory Council, though none currently. If Judge Griffith is appointed as special master and for so long as he holds that appointment, the firm will decline to approve service by firm lawyers on the NVLSP Advisory Council.

• The firm has no client relationship with Sidley & Austin nor is the firm currently representing clients adverse to Sidley & Austin itself. The firm has now and will continue to have representations in which Sidley & Austin is serving as opposing counsel for its own clients.

Sincerely,

Thomas B. Griffith