MICRO CHEMICAL, INC.,
Plaintiff–Appellee,

v.

LEXTRON, INC. and Turnkey
Computer Systems, Inc.,
Defendants–Appellants.

No. 02–1155.

United States Court of Appeals,
Federal Circuit.

Jan. 24, 2003.

Gregory A. Castanias, Jones, Day, Reavis & Pogue, of Washington, DC, argued for plaintiff-appellee. With him on the brief was William K. Shirey. Of counsel on the brief was John Mozola, Mullin Hoard & Brown, LLP, of Amarillo, TX.

Dennis J. Mondolino, Morgan, Lewis & Bockius, LLP, of New York, NY, argued for defendants-appellants. With him on the brief was Edward M. Reisner.

Before MICHEL, Circuit Judge, PLAGER, Senior Circuit Judge, and LOURIE, Circuit Judge.

PLAGER, Senior Circuit Judge.

In this case the trial court entered a final judgment on a jury verdict awarding damages to Micro Chemical, Inc. The defendants, Lextron, Inc. and Turnkey Computer Systems, Inc. (collectively, "the defendants"), appeal, challenging the district court's understanding of Rule 702 of the Federal Rules of Evidence and of the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S.

579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Defendants specifically challenge the district court's decision to admit the testimony of Micro Chemical's damages expert, as well as the district court's denial of their motion for judgment as a matter of law, or alternatively, for a new trial. Because we conclude that the district court properly performed its gatekeeping role, and did not abuse its discretion in allowing Micro Chemical's damages expert to testify, and because substantial evidence supports the jury's award of damages, we affirm the district court's judgment and its denial of the defendants' motion for a new trial.

## BACKGROUND

Micro Chemical and Lextron are direct competitors in the business of providing goods and services to cattle feedlots. Among the goods they supply to their customers are drugs and equipment used to treat illnesses afflicting cattle, referred to by the parties in this litigation as "animal health products." They also offer their feedlot customers computerized medical records systems for tracking health histories and medical treatments of livestock. Micro Chemical's medical records system is the commercial embodiment of the invention in its U.S. Patent No. 5,315,-505 ("the '505 patent"), the patent at issue in this case.

The evidence indicates that Micro Chemical provides its computer systems essentially free of charge to feedlots in an effort to promote sales of its animal health products. Lextron also places its computer systems in feedlots for free or at a substantial loss. The record contains evidence that Lextron's goal also is to generate sales of its animal health products, although Lextron disputes that on appeal.

Turnkey supplies accounting system software to cattle feedlots. Among the add-on software modules offered by Turnkey is an animal records module, which tracks health and treatment histories of livestock. Turnkey has also created interfaces between its accounting system and other companies' medical records systems. The record includes evidence that Turnkey underpriced its animal records module and that sales of the animal records module support sales of its accounting system.

When the '505 patent issued in 1994, Micro Chemical filed a patent infringement suit against Lextron and Turnkey. In the course of that litigation, the defendants stipulated that their original systems infringed the '505 patent. Both defendants then modified their systems to remove the feature they believed was necessary to a finding of infringement; this feature related to a displayed warning if an animal was scheduled for shipment to a slaughterhouse before the end of the withdrawal period for all drugs administered to the animal.

An issue remained as to whether Lextron's modified system infringed. The district court conducted a Markman hearing directed to a disputed claim limitation relating to a drug withdrawal calculation. After the court issued an order adopting Micro Chemical's claim construction, Lextron stipulated that its modified system infringed under that construction. The district court entered a stipulated judgment, and an earlier appeal to this court followed. On appeal this court disagreed with the district court's claim construction, vacated the judgment, and remanded for further proceedings. *Micro Chem., Inc. v. Lextron, Inc.*, No. 97–1589, 1998 WL 386195 (Fed.Cir. June 17, 1998) (non-precedential).

In response, Micro Chemical amended its complaint to limit its infringement allegations to the defendants' unmodified systems. The only issue thus left for trial was the amount of damages from the date

the patent issued to the dates in 1997 when the defendants modified their systems.

Prior to the trial on damages, the defendants filed motions *in limine* to preclude certain testimony by Micro Chemical's damages expert, Edward Fiorito. First, the defendants sought to prevent Fiorito from testifying that the defendants' 1997 modified systems could not be considered non-infringing alternatives for purposes of determining the amount of damages. The district court denied that motion without comment. The defendants also filed a motion to preclude Fiorito from testifying that a reasonable royalty for Lextron's infringing computer systems would be three percent of its revenues from sales of animal health products, as Fiorito had stated in his expert report. The trial court ruled that Micro Chemical could not recover a royalty on the animal health products themselves but could show that sales of animal health products were relevant to a reasonable royalty determination because Micro Chemical alleged that the defendants used their infringing systems as loss leaders to promote animal health product sales. The defendants further sought to preclude Fiorito from testifying at all on the grounds that his testimony would not satisfy the requirements for expert testimony set out in Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert.* The district court reserved ruling on the defendants' *Daubert* motion.

At trial, Fiorito testified that a reasonable royalty for the defendants' infringing systems based upon a hypothetical negotiation between the parties at the time infringement began would be $400 per month per system. To support this figure, Fiorito analyzed the relevant factors set out in *Georgia–Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116, 166 USPQ 235 (S.D.N.Y.1970), *modified and aff'd,* 446 F.2d 295, 170 USPQ 369 (2d Cir.1971). Relying on statements made by employees of Micro Chemical and the defendants, Fiorito concluded that several factors would lead to a higher royalty, including Micro Chemical's established policy of not licensing its patents and evidence that the defendants supplied their customers with infringing systems to promote sales of other products (i.e., Lextron's animal health products and Turnkey's accounting systems). Multiplying by the number of systems and months of infringement, Fiorito testified that Lextron owed Micro Chemical damages of $1,539,600 and Turnkey owed damages of $145,600.

The defendants' damages expert, Walter Bratic, took the position that there was no connection between installation of the defendants' infringing systems and sales of the defendants' other products. He also opined that the value of the patented invention was negligible. Bratic testified that a reasonable royalty would be one percent of the defendants' imputed revenues, i.e., the revenues if the defendants had sold their infringing systems for full retail price. This would result in $12,717 in damages from Lextron and $735 from Turnkey.

The jury returned a verdict against Lextron in the amount of $1,015,180 and against Turnkey in the amount of $72,800. The defendants filed post-trial motions for judgment as a matter of law (JMOL), or in the alternative, for a new trial. The defendants now appeal the district court's decision not to exclude Fiorito's testimony, and the denial of those motions.

## DISCUSSION

### I.

Whether proffered evidence should be admitted in a trial is a procedur-

al issue not unique to patent law, and therefore we review the district court's decision whether to admit expert testimony under the law of the regional circuit, here the Fifth Circuit. *See Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1360, 61 USPQ2d 1216, 1219 (Fed.Cir.2001). The Fifth Circuit reviews such evidentiary rulings for abuse of discretion. *Snap–Drape, Inc. v. Comm'r*, 98 F.3d 194, 197 (5th Cir.1996). The district court's interpretation of the Federal Rules of Evidence is reviewed without deference. *See Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 827 (5th Cir.1996).

## A.

■ As a preliminary matter, we reject Micro Chemical's contention that the defendants waived their right to challenge on appeal the admission of Fiorito's testimony. Under the 2000 amendment to Rule 103 of the Federal Rules of Evidence, "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, *either at or before trial*, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed.R.Evid. 103(a) (emphasis added); *see also Mathis v. Exxon Corp.*, 302 F.3d 448, 459 & n. 16 (5th Cir.2002) (noting that before the 2000 amendment, the Fifth Circuit required an objection at trial to preserve the error).

Here, the district court made definitive rulings either before or at trial on all of the defendants' objections to Fiorito's testimony. Before trial, the district court denied the defendants' motion *in limine* objecting to Fiorito's proposed testimony that defendants' modified systems were not relevant to the determination of a reasonable royalty. Regarding the defendants' motion *in limine* objecting to the use of animal health product sales in the damages determination, the district court ruled before trial that sales of animal health products could not serve as the

royalty base but could otherwise be relevant to a reasonable royalty calculation, and then reiterated its ruling in response to the defendants' objection during trial. Finally, the district court reserved ruling prior to trial on the defendants' motion *in limine* to exclude Fiorito's testimony *in toto* on *Daubert* grounds. At the conclusion of Fiorito's testimony, however, the defendants renewed their objection on *Daubert* grounds, which the district court clearly overruled at that time. Thus in each of these situations the defendants' right to appeal the admission of Fiorito's testimony was preserved.

## B.

The landmark case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), provides the analytical framework for determining the admissibility of expert testimony under Rule 702. The trial court acts as a 'gatekeeper' to exclude expert testimony that is irrelevant or does not result from the application of reliable methodologies or theories to the facts of the case. *Id.* at 589–92, 113 S.Ct. 2786. In *Daubert*, the Supreme Court set forth a non-exclusive list of factors that district courts may use in evaluating expert testimony. *Id.* at 593–94, 113 S.Ct. 2786. The Court later emphasized that the *Daubert* inquiry is "a flexible one" and that the analysis will depend on the nature of the issue, the witness's expertise, and the subject of the testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The Court also explained that the principles of *Daubert* apply not only to scientific testimony, but to all expert testimony. *Id.* at 149, 119 S.Ct. 1167.

In 2000, Rule 702 was amended in response to *Daubert* and cases applying it, including *Kumho Tire*. That rule now pro-

vides that an expert witness with "scientific, technical, or other specialized knowledge" may testify in the form of an opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

The defendants contend that the district court in this case failed to perform its gatekeeping duties when it allowed Fiorito to testify. Specifically, the defendants argue that Fiorito based his opinion on inaccurate facts because he relied on the statements of others and did not undertake an independent investigation of the feedlot industry or personally review the parties' financial records. The defendants further argue that Fiorito misapplied the *Georgia–Pacific* factors and that he repeatedly misstated and distorted the law regarding consideration of non-infringing alternatives and convoyed or derivative sales in determining reasonable royalty damages. We address each of these issues in turn.

■ First, we disagree with the defendants' assertion that Fiorito's testimony did not satisfy subpart (1) of Rule 702, which provides that expert testimony must be "based upon sufficient facts or data." Defendants confuse the requirement for sufficient facts and data with the necessity for a reliable foundation in principles and method, and end up complaining that Fiorito's testimony was not based on "reliable facts." The parties disputed many of the facts relevant in determining a reasonable royalty, the foremost being whether the defendants' modified systems would have been available at the time of a hypothetical royalty negotiation and whether the defendants promoted sales of their other products by distributing their infringing systems to feedlots free of charge or at a substantial loss. When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony. We find the Advisory Committee note to Rule 702 instructive in this regard:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

*See also Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 249–50 (5th Cir.2002) (holding that jury was entitled to hear expert testimony and decide whether to accept or reject it after considering whether predicate facts on which expert relied were accurate). The Advisory Committee note further counsels that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Indeed, as the Supreme Court stated in *Daubert:* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595, 113 S.Ct. 2786.

In this case, the trial court properly did not rule inadmissible Fiorito's damages testimony simply because it was based on Micro Chemical's version of the contested facts. The defendants had ample opportunity to rebut Fiorito's damages theory during cross-examination. They also presented their competing theory through the testimony of their own expert witness, who based his opinion testimony on the defendants' version of the disputed facts. Under these circumstances, the district court did not abuse its discretion in allowing Fiorito to testify.

■ Furthermore, we cannot say that Fiorito's testimony was the product of an unreliable methodology. This court has "endorsed the conceptual framework of a hypothetical negotiation between patentee and infringer as a means for determining a reasonable royalty." *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384, 61 USPQ2d 1152, 1162 (Fed. Cir.2001). Factors relevant in a reasonable royalty determination using this method include those set out in *Georgia–Pacific*. *See Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 n. 7, 36 USPQ2d 1540, 1544 n. 7 (Fed.Cir.1995). Fiorito properly applied the accepted *Georgia–Pacific* methodology to Micro Chemical's version of the disputed facts, explaining the effect each factor would have on a negotiated royalty.

The defendants contend that the district court should not have permitted Fiorito to consider sales of the defendants' other products in arriving at a reasonable royalty. Before trial, the district court ruled that Micro Chemical could not include sales of non-patented items in the royalty base but could demonstrate that those sales were relevant in determining a reasonable royalty. That ruling is consistent with one of the *Georgia–Pacific* factors— "[t]he effect of selling the patented specialty in promoting sales of other products of the [infringer]." 318 F.Supp. at 1120, 166 USPQ at 238; *see also Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568, 224 USPQ 259, 269–70 (Fed. Cir.1984) (holding that profits from sale of non-patented eyeglasses displayed on infringing racks were relevant to reasonable royalty determination). In applying that factor to this case, Fiorito testified that, in his opinion, the reasonable royalty on the defendants' infringing systems would increase because their placement in customers' feedlots would promote sales of the defendants' other products. Whether placing the infringing systems in feedlots actually promoted derivative sales of the defendants' other products is a question of fact for the jury. That Fiorito's reasonable royalty analysis relied on his resolution of the factual issue is not grounds for excluding his testimony under Rule 702.

The defendants also argue that Fiorito's testimony regarding the availability of non-infringing alternatives at the time of infringement was contrary to our decision in *Grain Processing Corp. v. American Maize–Products Co.*, 185 F.3d 1341, 51 USPQ2d 1556 (Fed.Cir.1999). We disagree. The issue in *Grain Processing* was whether the patentee was entitled to damages in the form of lost profits, which cannot be recovered if acceptable non-infringing alternatives were available during the period of infringement. We held that a non-infringing substitute not on the market during the time of infringement may nevertheless have been "available" for purposes of defeating a lost profits claim if other facts show the infringer could have manufactured the non-infringing alternative and would have known it would be acceptable to consumers at the time of infringement. *Id.* at 1349, 1353, 185 F.3d 1341, 51 USPQ2d at 1562, 1565.

This case involves reasonable royalty damages, not lost profits. This court has not had occasion to address whether the holding of *Grain Processing* has applicability in the reasonable royalty context. We need not decide that issue here, because in any event Fiorito's testimony was not inconsistent with the rule of *Grain Processing*. In discussing one of the *Georgia–Pacific* factors—"[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results," 318 F.Supp. at 1120, 166 USPQ at 238—Fiorito testified that the fact that the defendants modified their systems in 1997 would not have reduced the royalty rate that would

have been agreed upon in a hypothetical negotiation in 1994. He did not testify, as the defendants allege, that only products offered for sale in 1994 could be considered in determining a reasonable royalty. Rather, he testified that the defendants' modified systems were not "available" in 1994 because they did not exist and, in his opinion, the evidence did not show they would have been acceptable to feedlots. Fiorito's testimony was not legally erroneous; it was merely based on Micro Chemical's version of the disputed facts.

We have considered and are not persuaded by the defendants' other arguments regarding the admissibility of Fiorito's testimony, including the defendants' contention that the district court erred by refusing to give corrective instructions to the jury. Fiorito's testimony did not run afoul of Rule 702, and the district court did not abuse its discretion in admitting it.

## II.

The amount of damages based on a reasonable royalty is an issue of fact. *Unisplay*, 69 F.3d at 517, 36 USPQ2d at 1544. Thus, when we review a district court's denial of JMOL, we review a jury's damages award under the substantial evidence standard. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 n. 2, 17 USPQ2d 1922, 1925 n. 2 (Fed.Cir.1991); *see also Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir.1998) ("We may overturn a jury verdict only if it is not supported by substantial evidence."). We review a district court's denial of a motion for a new trial on the amount of damages for abuse of discretion. *Unisplay*, 69 F.3d at 517, 36 USPQ2d at 1544; *see also Rutherford v. Harris County*, 197 F.3d 173, 179 (5th Cir.1999) (stating that denial of motion for a new trial is reviewed for abuse of

discretion, i.e., moving party must make "a clear showing of an absolute absence of evidence to support the jury's verdict" (citations omitted)).

This case is a classic example of competing experts. Each side had the opportunity to present its damages theory. Each party's expert supported his reasonable royalty determination with an analysis of relevant factors based on his client's view of the disputed facts. The outcome of the case depended to a large extent upon which predicate facts the jury believed, and then on which expert's analysis they believed. Upon reviewing the record, we cannot say that Micro Chemical's damages theory and the jury's ultimate damages award were unsupported by substantial evidence.[1] The defendants may not like the jury verdict, but it was the result of a fair trial, fairly fought. We find no reversible error in the district court's denial of the defendants' motions for JMOL or a new trial.

## CONCLUSION

The judgment of the district court is

*AFFIRMED.*

---

1. We note that although the jury appears to have accepted Micro Chemical's damages theory, it reduced Lextron's award by approximately one-third and Turnkey's award by one-half.