INLINE CONNECTION CORPORA-
TION, Broadband Technology Innova-
tions, LLC, and Pie Squared, LLC,
Plaintiffs,

v.

AOL TIME WARNER
INCORPORATED, et
al., Defendants.

Inline Connection Corporation, Broad-
band Technology Innovations, LLC,
and Pie Squared, LLC, Plaintiffs,

v.

EarthLink, Inc., Defendant.

No. C.A. 02–272–MPT,
C.A. 02–477–MPT.

United States District Court,
D. Delaware.

Jan. 16, 2007.

Julia Heaney, Thomas C. Grimm, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Plaintiffs.

Chad Michael Shandler, Kelly E. Farnan, Richards, Layton & Finger, Gary Wil-

liam Lipkin, Duane Morris LLP, Wilmington, DE, for Defendants.

Broadband Technology Innovations LLC, pro se.

Pie Squared LLC, pro se.

## MEMORANDUM ORDER

THYNGE, United States Magistrate Judge.

### I. INTRODUCTION

This is a patent infringement case. Inline Communication Corporation ("Inline") sued America Online Inc. ("AOL") on April 12, 2002, and EarthLink, Inc. ("Earth-Link") on June 4, 2002, alleging infringement of U.S. Patent Nos. 5,844,596 ("the '596 patent"), 6,243,446 ("the '446 patent"), and 6,236,718 ("the '718 patent").[1]

On August 31, 2006, AOL and Earth-Link ("defendants") jointly filed motions for partial summary judgment and *in limine* to preclude damages for customers provisioned through non-infringing central office ("CO") DSLAMS.[2] On September 20, 2006, Inline responded by arguing that its expert's methodology on damages is supported by substantial evidence and therefore, any disagreement regarding appropriate methodologies is not properly determined on summary

judgment.[3] On October 27, 2006, AOL and EarthLink jointly filed a motion *in limine* to exclude the testimony of Inline's expert, James E. Malackowski,[4] arguing that his testimony is not supported by reliable evidence and is based on unsupported conclusions regarding hypothetical negotiations with Inline. Moreover, defendants ask that Malackowski be precluded from offering testimony regarding AOL's "Bring Your Own Access" ("BYOA") service on the basis that there is no evidence that sales of these services meet the legal requirements of a convoyed sale and the revenues from such sales are irrelevant. On November 17, 2006, Inline responded by arguing that its damage calculations are grounded on sufficient facts and that BYOA service commissions are probative under the *Georgia–Pacific*[5] factors.

In its opinion of December 5, 2006, the court determined that the defendants' motions for partial summary judgment and *in limine* on the preclusion of damages for non-infringing CO lines, and their motion *in limine* to exclude Malackowski's expert testimony were intrinsically related and should be decided together. For the reasons discussed herein, defendants' motions are granted in part and denied in part.

---

**1.** Inline's U.S. Patent No. 6,542,585 ("the '585 patent") was subsequently added to this litigation. The '718 patent is not at issue in this litigation.

**2.** D.I. 441 (Defendant's America Online, Inc.'s and EarthLink, Inc.'s Motion for Partial Summary Judgment and Motion *In Limine* Precluding Damages for Customers Provisioned through Non–Infringing Central Office DSLAMS). The court previously granted defendants' motion on failure to mark in *Inline Connection Corp. v. AOL Time Warner Inc.*, No. CIV. A. 02–272–MPT, CIV. A. 02–477–MPT, 2006 WL 3495979 (D.Del. Dec.5, 2006).

**3.** D.I. 476 (Plaintiffs' Answering Brief in Opposition to Defendants' Motion for Partial

Summary Judgment and Motion *In Limine* Precluding Damages for Customers Provisioned through Non–Infringing Central Office DSLAMS).

**4.** D.I. 513, 514 (Defendants' Motion *In Limine* to Exclude or Preclude the Expert Testimony of James E. Malackowski and Opening Brief in support thereof). Defendants also incorporate their Joint Motion for Partial Summary Judgment into this motion *in limine*. See D.I. 441, 444, and 493.

**5.** *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y.1970).

## II. POSITIONS OF THE PARTIES

### A. Motion *in limine* to Limit the Expert Testimony of James E. Malackowski.

AOL and EarthLink argue that Malackowski's analysis lacks the reliability required by the Federal Rules of Evidence and deviates from the standards in *Daubert*[6] and therefore is inadmissible evidence. Defendants contend that Malackowski improperly relied upon an unfounded conclusion that AOL and Earth-Link would have agreed to pay a royalty on all ADSL customers because they would not have obtained remote terminal ("RT") deployment information. Defendants also argue that Malackowski's analysis is not "tied" to any reliable evidence or data. In this regard, they assert that Malackowski did not account for the possibility that some customers provisioned through a RT do not infringe the patents-in-suit because not all claim limitations are satisfied. Moreover, they state that neither Malackowski nor Dr. Charles Jackson (Inline's infringement expert) offer any evidence regarding the specific number of AOL or EarthLink users who infringe the patents in question.

Defendants also move to preclude Malackowski's opinion regarding AOL's BYOA service[7] on the basis that there is no evidence that BYOA service infringes the patents-in-suit; BYOA sales have no relationship to a reasonable royalty rate calculation, and as such, expert evidence would mislead the jury. They contend that Inline's conclusion that BYOA revenues influence a reasonable royalty calculation is flawed as a matter of law because BYOA service is not sold in connection with an infringing product. Defendants contend that the value of these transactions were not accounted for in Malackowski's computation of a reasonable royalty rate, and should therefore be omitted as not probative.

Inline contends that Malackowski's methodology is supported by the evidence and accurately relies upon the hypothesis that AOL and EarthLink would not or could not have obtained RT deployment information during the hypothetical royalty negotiations. It argues that Malackowski properly analyzed damages by determining the cost savings that defendants enjoyed through the use of the inventions. Inline also contends that AOL's BYOA service is intrinsically related to ADSL sales. According to Inline, "if sales of an infringing product are used to increase sales of a non-infringing product, the non-infringing sales are considered convoyed or derivative sales."[8] Since AOL receives commissions from a third party for each ADSL subscription by an AOL customer, Inline contends that Malackowski properly considered AOL's revenues under *Georgia–Pacific* Factor No. 6.[9] Inline further

---

**6.** *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**7.** D.I. 514 at 8. BYOA or "Bring Your Own Access" is a service whereby content and online services, such as e-mail, are provided. The BYOA subscriber is responsible for acquiring high-speed internet service, whether it is ADSL, cable or satellite. In his expert report, Malackowski assumed that EarthLink did not realize profits from BYOA services; thus, he only commented on revenues from

AOL's BYOA sales in his opinion. D.I. 477, Ex. F at 52 (April 17, 2006, Expert Report of James E. Malackowski).

**8.** D.I. 555 at 13.

**9.** *Georgia–Pacific* provides a 15 factor framework for determining a reasonable royalty from a hypothetical negotiation between the patent holder and the infringer. *Georgia–Pacific* factor No. 6 is "the effect of selling the patented specialty in promoting sales of other products of the license; the existing value of

asserts that Malackowski's opinion regarding AOL's BYOA services is not misleading, but demonstrates the overall reasonableness of his damages analysis.[10]

## B. Motion to Preclude Damages for Customers Provisioned through Non–Infringing CO DSLAMS

AOL and EarthLink assert that the methodology utilized by Malackowski is flawed as a matter of law. AOL and EarthLink contend that Inline's expert impermissibly includes as part of his royalty calculation those customers provisioned through non-infringing CO DSLAMS and that Inline is not entitled to compensation which incorporates non-infringing use. AOL and EarthLink request that Inline be prohibited from presenting a damages model which applies a royalty to all ADSL lines, including non-infringing CO lines.

In support of their position, AOL and EarthLink state that: (1) this court determined that CO-provisioned ADSL lines do not infringe as a matter of law; (2) Inline should not be permitted to circumvent this court's prior ruling; (3) Inline's expert relies on the absence of information, specifically, telephone company records, to opine that a royalty base includes all ADSL lines; and (4) Inline's expert ignores the actual and reliable estimated RT deployment data. AOL and EarthLink argue that Inline's damage methodology is not based on a "reasonable royalty" formula and point to evidence which they say establishes that approximately two-thirds of

ADSL customers are provisioned through non-infringing COs.

Inline counters that the court should deny AOL and EarthLink's motion because the evidence supports the Cost Approach method employed by Malackowski. Inline argues that a methodology which employs a broader royalty base is not prohibited merely because it includes non-infringing sales.[11] In support of that argument, Inline points out AOL and EarthLink did not know whether customers would be provisioned through CO or RT lines, and as a result, they would have used truck roll installations for all subscribers to avoid infringement. Therefore, according to Inline, a reasonable royalty rate should reflect the cost of the truck rolls which defendants avoided by infringement.

Finally, Inline emphasizes that differences in methodologies for assessing damages, the credibility of each expert and the weight given to the evidence is within the province of the jury, which cannot be resolved on summary judgment.

## III. LEGAL STANDARD

### A. Evidentiary Standards for Expert Testimony

AOL and EarthLink move to limit Inline's evidence regarding the licensing royalty base on which damages are calculated. Specifically, they want Malackowski's opinion confined to the subset of EarthLink or

---

the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales."

10. D.I. 555 at 4. According to Inline, since Malackowski's analysis of BYOA commissions under Factor No. 6 did not increase or decrease the royalty rate, the probative value of his opinion outweighs any prejudice to AOL and his conclusions are, therefore, reasonable.

11. D.I. 476. Malackowski uses three methods in calculating a reasonable royalty-the Market Approach, Income Approach, and Cost Approach. Inline argues that Malackowski concluded that the Cost Approach was the most logical of the three because AOL and EarthLink would not have had profit projections at the time of the hypothetical negotiation.

AOL customers who allegedly infringe the patents-in-dispute. Defendants argue that Malackowski's testimony lacks the reliability required by Federal Rules of Evidence ("FRE") 702.

Rule 702 provides in relevant part:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert*, the Supreme Court found that Rule 702 "confides to the judge some gatekeeping responsibility in deciding questions of the admissibility of proffered expert testimony."[12] This gatekeeper function of excluding unreliable testimony has also been applied to patent litigation.[13] *Daubert* provides a "non-exclusive checklist"[14] for trial courts to use in their assessment of whether expert testimony met the reliability requirements. FRE *Advisory Committee Notes*[15] are instructive as well. The 2000 Amendments emphasize that no single factor is necessarily disposi-tive of the reliability of an expert's testimony. Rather, the amendments identify a number of factors relevant to non-scientific expert testimony on the issue of reliability.

■ The determination of whether to exclude expert evidence is committed to the court's discretion.[16] The Third Circuit has noted, however, that:

While evidentiary rulings are generally subject to a particularly high level of deference because the trial court has a superior vantage point to assess the evidence . . ., evaluating the reliability of scientific methodologies and data does not generally involve assessing the truthfulness of the expert witnesses and thus is often not significantly more difficult on a cold record. Moreover, here there are factors that counsel in favor of a hard look at (more stringent review of) the district court's exercise of discretion. For example, because the reliability standard of Rules 702 and 703 is somewhat amorphous, there is a significant risk that district judges will set the threshold too high and will in fact force plaintiffs to prove their case twice. Reducing this risk is particularly important because the Federal Rules of Evidence display a preference for admissibility.[17]

The Third Circuit found that " 'the exclusion of critical evidence is an "extreme"

---

**12.** *Daubert,* 509 U.S. at 600, 113 S.Ct. 2786.

**13.** See *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

**14.** *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786.

**15.** "The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or theory can be or has been tested——that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community." FRE 702, *Advisory Committee Notes,* 2000 Amendments.

**16.** *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 749 (3d Cir.1994).

**17.** *Id.* at 749–50.

sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence,' " [18] and identified several factors for the court to consider in deciding whether to exclude testimony:

(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.[19]

The Third Circuit also noted that " 'the importance of the excluded testimony' should be considered." [20]

■ Nonetheless, the trial judge has considerable leeway in deciding how to determine whether expert testimony is reliable. The Third Circuit found in *In re Paoli R.R.* that profferers of expert testimony do not have to "demonstrate ... by a preponderance of the evidence that the assessments of their experts are *correct,* they [need] only ... demonstrate by a preponderance of evidence that their opinions are reliable," [21] *Daubert* recognized that "vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." [22] *Daubert* emphasized that the trial court must "focus" solely on principles and methodology, and not on the conclusions they generate.[23] A trial judge, however, is to scrutinize whether such methods have been properly applied to the facts of the case.[24] In making the decision to exclude evidence, the court must balance the need for the challenged evidence against the risk that it will confuse the jury and delay trial.[25] To exclude evidence is within purview of the court, but "determinations to exclude evidence before the challenging party has an opportunity to develop the record are unfair and improper." [26]

■ Finally, the Federal Circuit's decision in *Micro Chemical Inc. v. Lextron, Inc.*[27] sheds light on the role of the trial court under FRE 702. "When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying an expert's testimony." [28]

## B. Summary Judgment

■ AOL and EarthLink move for partial summary judgment to limit Inline's damages claim to a subset of their ADSL customers connected through RT lines. Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, togeth-

---

18. *Id.* at 791–92 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 905 (3d Cir.1977)).

19. *Id.*

20. *Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir.1997) (quoting *Meyers,* 559 F.2d at 904).

21. *In re Paoli R.R.,* 35 F.3d at 744.

22. *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786.

23. *Id.* at 580, 113 S.Ct. 2786.

24. *See Id.*

25. *See In re Paoli R.R.,* 35 F.3d at 746.

26. *In re Paoli R.R. Yard PCB Litig.,* 916 F.2d 829, 859 (3d Cir.1990).

27. 317 F.3d 1387 (Fed.Cir.2003).

28. *Id.* at 1392.

er with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [29] This standard has also been applied to patent cases.[30] The party seeking summary judgment bears the initial burden of establishing the lack of a genuinely disputed material fact by demonstrating that there is an "absence of evidence to support the nonmoving party's case." [31] The court is to give the nonmoving party the benefit of all justifiable inferences and must resolve disputed issues of fact in favor of the nonmovant.[32] Summary judgment is not appropriately based on argument that parties' experts use different theories, data and reach different conclusions. "The court may not determine the credibility of the witnesses nor substitute its choice for that of the jury between conflicting elements of the evidence." [33] To the extent that there are conflicts in the evidence with respect to damages, "neither the trial court ... nor the appellate court, may substitute its findings for those of the jury." [34] A patentee may seek to recover actual damages in the form of lost profits, or, in the event that lost profits cannot be ascertained, on the basis of a reasonable royalty.[35] The patentee is entitled, at a minimum, to a reasonable royalty for infringement of its patent.[36] The amount of damages, or harm sustained by a patentee, is a question of fact, "decided by a jury when trial is to a jury." [37]

## IV.  ANALYSIS

### A.  Motion *in limine* to Preclude Malackowski's Opinion which Includes Customers Provisioned through COs

■ AOL and EarthLink argue that Malackowski's opinion is based on speculation, and not on evidence or reliable data, because the reasonable royalty resulting from the hypothetical licensing negotiations would not apply to *all* of defendants' ADSL customers, but only to those serviced through RTs. Defendants contend that the specific number of potentially infringing customers should have been used and the analytical gap between Malackowski's data and his conclusions is too significant to be reliable. Defendants conclude that his opinion is merely speculation, because it relies entirely on assumptions without foundation.

Malackowski's conclusions are not unfounded, as defendants suggest, simply because his calculations incorporate the total number of defendants' customers, including those who do not infringe. Malackowski's report meets the requirements of FRE 702 and the case law. Defendants cannot, and have not argued that he lacks

**29.**  Fed. R. Civ. Pro. 56(c).

**30.**  *See Johnston v. IVAC Corp.,* 885 F.2d 1574, 1576–77 (Fed.Cir.1989).

**31.**  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**32.**  *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

**33.**  *Arthrocare Corp. v. Smith & Nephew, Inc.,* 310 F.Supp.2d 638, 652 (D.Del.2004).

**34.**  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 72 F.3d 857, 867 (Fed.Cir. 1996).

**35.**  *See Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed.Cir.1988).

**36.**  *See Rite–Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1544 (Fed.Cir.1995) (en banc); *Panduit Corp. v. Stahlin Bros. Fibre Works,* 575 F.2d 1152, 1156 (6th Cir.1978) (holding that if damages are not measured by lost profits, then the patent owner is entitled to a reasonable royalty under 35 U.S.C. § 284).

**37.**  *Festo,* 72 F.3d at 866.

the requisite knowledge, skill, experience and training. His opinion incorporates methodologies used by experts in his field. He employs three distinct methods to evaluate a reasonable royalty rate: the Market Approach, the Income Approach, and Cost Approach.[38] Each approach is commonly used by experts to value intangible assets. FRE 703 allows experts to use evidence that would not commonly be admissible in court, as long as, it is reasonably applied or relied upon by experts in the field for their conclusions. Malackowski's report concludes that the Cost Approach gives the "best indication of a royalty in this case" and that $35 per customer is a reasonable starting point.[39] AOL and Earth-Link do not dispute that Malackowski employs generally accepted methods and principles; rather, they contend that he improperly concludes that they would have agreed to a royalty base of all ADSL customers, including non-infringing COs.

■ Both sides have argued to exhaustion whether either could have determined the number of customers that were provisioned through the CO and RT lines at the time of the hypothetical negotiations. Whether or not either side could have, or should have made that determination, is irrelevant to the issues under consideration. The parties' arguments demonstrate that material contested facts exist which directly relate to weight and credibility. Under *Daubert* and FRE 702, it is not the court's role to evaluate and determine facts underlying an expert's testimony.

■ AOL and EarthLink move to preclude Malackowski's testimony regarding BYOA related commissions, profits and revenues[40] on the basis that BYOA services do not fall under the definition of convoyed goods and as such, have no probative value. "The expression 'convoyed sales' should preferably be limited to sales made simultaneously with a basic item."[41] Convoyed sales occur when the sale of one thing is likely to cause the sale of anoth-

**38.** D.I. 477, Ex. F at 39–48. The Market Approach values assets based on comparable transactions between unrelated parties. Malackowski considered the licensing history of Inline, AOL and EarthLink; however, he notes that the defendants refused to provide any patent license agreements for the previous 5 years. The Income Approach estimates an asset's price based on the value of the benefits derived from the use of that asset. The 25% Rule of Thumb and the Analytical Approach are two variations of the Income Approach. The 25% Rule of Thumb suggests that a licensee might regard 1/4 of its expected profits from products incorporating a piece of intellectual property as a starting point in negotiating a license for that property. Malackowski explained that he could not locate information regarding AOL or Earth-Link's financial projections dating from the time of the hypothetical negotiation; therefore, he used the actual operating profits of AOL and EarthLink from 1999 as a proxy, though these numbers produced 9.6% profit margin for AOL and between 0 and 3.5% profit margin for EarthLink. Lastly, the Cost Approach is based on the economic principles of substitution and price equilibrium. This approach considers out-of-pocket expenses in addition to risks and other adverse economic impacts associated with alternative technology. A portion of the cost-savings is shared between the licensee and licensor. Malackowski explained that he took the cost of defendants' next best alternative to performing self-installation—the performance of truck roll installation. As a result, Malackowski determined that $35 per customer would be a reasonable starting point for a royalty.

**39.** D.I. 477, Ex. F at 48.

**40.** BYOA commissions and the resulting revenues and profits were collectively referred to as "bounties" by both defendants and Inline in their respective motions.

**41.** *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 882 n. 8 (Fed. Cir.1995).

er.[42] Although convoyed sales may be used in determining a reasonable royalty rate where the hypothetical licensee would have anticipated increased convoyed sales as a result of sales of the allegedly infringing product,[43] defendants argue that BYOA service does not meet this definition and should not have been included in Malackowski's analysis.

BYOA revenues are not probative or relevant, and therefore fail to meet the criteria for admission under FRE 401 and 702. Malackowski admits in his deposition that BYOA revenues are irrelevant to his calculations of a reasonable royalty.

Q. Okay.... At the end of the day, if—if you took this—if you took a pair of scissors and cut this—that section of your report that talked about bounty profits in Factor 6, that wouldn't have any impact on any of your opinions in this case, would it?

A. I don't think it would change anything.

Q. Nothing?

A. I don't think so.[44]

Malackowski later commented that BYO revenues were "simply listed" in his opinion because they are "a fact in the record."[45]

Clearly, Malackowski did not consider BYOA revenues as relevant to his calculation of a reasonable royalty. Although he concludes in his opinion, without any explanation of how or why BYOA offerings are convoyed sales, the revenues derived from that service are not an element of his reasonable royalty computations. Inline agrees that Malackowski does not use those revenues as part of his calculation of a reasonable royalty. It argues however, that AOL's BYOA revenues should be included to show the completeness of his analysis of all the *Georgia–Pacific* factors, including convoyed sales.[46]

FRE 401 defines relevant evidence as:

evidence having any tendency to make the existence of any fact that is *of consequence* to the determination of the action more or less probable than it would be without the evidence. (emphasis added).

In determining whether an item of evidence is relevant, the court evaluates whether the evidence "tends to prove the matter sought to be proved."[47] The matter under consideration is the reasonable royalty from which to calculate damages. Malackowski concedes that his entire discussion regarding BYOA under *Georgia–Pacific* factor No. 6 literally could be "cut out" of his opinion and it would have no effect on his reasonable royalty analysis. The primary reason that he includes the discussion is because "[i]t's a fact in the record." Because a matter is a fact in the record does not make it a relevant fact. For a fact to be relevant it must be of consequence to the issue under determination. FRE 402 provides that "evidence which is not relevant is not admissible."

**42.** *See Procter and Gamble Co. v. Paragon Trade Brands, Inc.,* 989 F.Supp. 547, 610 (D.Del.1997).

**43.** *See Carborundum Co.,* 72 F.3d 872.

**44.** D.I. 566, Ex. X at 604 (Malackowski deposition transcript July 13, 2006).

**45.** *Id.*

**46.** Although the parties expound on whether BYOA service is a convoyed sale, the court need not address the issue in light of Malackowski's concession that revenues from BYOA service were not included in his reasonable royalty calculation.

**47.** FRE 401 *Advisory Committee Notes,* 1972 Proposed Rules.

Although Inline argues that excluding evidence is an extreme sanction, particularly "before the challenging party has the opportunity to develop the record," this argument assumes that the evidence is relevant and ultimately critical to an expert's conclusions.[48] Malackowski concedes that the revenues and/or profits from BYOA services are not critical.

Therefore, the court determines that Malackowski not be allowed to affirmatively testify regarding the revenues and profitability of AOL's BYOA service offerings. This opinion does not address what Inline may be allowed to present on rebuttal to evidence presented by defendants regarding BYOA service offerings.

Based on the foregoing, AOL and EarthLink's motion *in limine* to exclude Malackowski's opinion regarding customers provisioned through non-infringing CO lines is denied. AOL and EarthLink's motion *in limine* to exclude Malackowski's testimony as to AOL's BYOA services (D.I.513) is granted to the extent noted herein.

### B. Motion to Preclude Damages for Non–Infringing CO DSLAMS

■ As stated previously herein, summary judgment is available where there is no genuine issue of material fact. AOL and EarthLink argue to limit Inline's damages because 35 U.S.C. § 284 only requires that damages be adequate to compensate for the infringement. Defendants argue that since CO-provisioned ADSL lines do not infringe the patents-in-suit, it therefore follows that damages may only compensate a patentee for sales of infringing products. Without further explanation, defendants also surmise that none of the *Georgia–Pacific* factors or cases where courts have allowed recovery of damages on non-infringing goods have any application to this situation.[49]

The court finds that, at this stage, to restrict Inline's damages analysis as proposed by defendants is inappropriate. The experts have differing damage theories and, not surprisingly, have reached different conclusions regarding damages. The question of a reasonable royalty and the corresponding applicable customer royalty base are facts in dispute for the jury to decide. In their argument, defendants ignore that calculating a reasonable royalty is not merely a function of the number of infringing systems, other elements contribute to and influence the analysis. The *Georgia–Pacific* factors, which defendants disregard in a footnote as "inapplicable," expose contingencies that influence a reasonable royalty determination. Defendants' misplaced focus on Inline's alleged lack of diligence to obtain accurate underlying data, and arguments about the correctness of Inline's expert calculations show that summary judgment is inappropriate. The court does not determine the credibility of expert witnesses or substitute its judgment for that of the jury. The determination of a reasonable royalty is an issue of fact to be decided by the trier of that fact.

Defendants have not established the lack of a genuine issue of material fact and therefore, defendants' summary judgment motion to exclude damages other than for

---

**48.** Inline's argument found at page 14 of its answering brief (D.I.555) that "AOL helped customers procure infringing self-install ADSL from other providers, and received the bounties for doing so, as part of its program to also sell to its customers subscriptions to AOL's content offerings," goes to the issue of convoyed sales. Malackowski, however, acknowledges that any such purported convoyed sales did not effect his ultimate opinion on the reasonable royalty.

**49.** D.I. 444 at 15.

RT provisioned ADSL lines (D.I.441) is denied.